IN THE MATTER OF THE APPLICATION OF THE
LIVERPOOL AND LONDON AND GLOBE INSUR-
ANCE COMPANY FOR A WRIT OF MANDAMUS
AGAINST F. W. MACFARLANE, F. J. TESTA, A.
N. KEPOIKAI, J. G. PRATT and A. C. LOVEKIN,
Commissioners of Fire Claims.

IN THE MATTER OF THE APPLICATION OF YIM
JAN KANG, WONG HING CHOW, CHANG KEE,
LEE CHU, CHUN YAN SING and CHING LUM,
and LEE CHU, President, LOO CHIT SAM, Vice-Pres-
ident, and T. J. KING, Treasurer, of the Oahu Lumber
and Building Company, Limited, Partners under the name
of Sing Chan Company, for a Writ of Mandamus against
F. W. MACFARLANE, F. J. TESTA, A. N. KEPOI-
KAI, J. G. PRATT and A. C. LOVEKIN, Commission-
ers of Fire Claims.

APPEALS FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED OCTOBER 8, 1902.       DECIDED NOVEMBER 15, 1902.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

Much property having been destroyed by fire in consequence of orders
of the Board of Health, in suppressing bubonic plague, a special
Commission was created by statute to adjudicate claims for the
loss of such property. The Commission having heard certain
claims presented by the owners and insurers respectively of cer-
tain property so destroyed, declined to award any sum to the
insurers, and awarded to the owners the total loss less the amount
paid by the insurers and stated that the balance so awarded was
subject to assignments previously made to the insurers up to the
amounts that had been paid by them. The owners and insurers

31-D

respectively then applied for writs of mandamus to compel the Commission to amend their awards so as to allow the total loss found either wholly to the owners subject to the assignments, or else part to the insurers and the remainder to the owners not subject to the assignments. Held,

The insurers had no valid independent claims of their own.

But, the contract of fire insurance being one of indemnity, an insurer against fire is, upon payment of the insurance, subrogated in a corresponding amount to the rights, if any, of the insured, against the one who caused the loss; and of course, the insurer may obtain rights by express assignment from the insured.

The statement, though unnecessary, in the award to the insured that it was subject to the rights of the insurance companies under the assignments made by the insured does not call for relief by mandamus.

*Quere*, whether the Commission should have awarded the total amount of the loss to the insured instead of deducting the amounts previously paid by the insurers.

But, *semble*, that, if the total amount should have been awarded, the award as made cannot be corrected by mandamus.

Even if the remedy by mandamus were as ample under our statute as the remedy is usually elsewhere by certiorari, still the award, having been made by the Commission acting within its jurisdiction, cannot be reviewed and corrected, since the statute makes it final and not subject to appeal.

It was competent for the legislature to provide that the awards of a special Commission of this kind created for adjudicating claims against the government should be final.

OPINION OF THE COURT BY FREAR, C.J.

These applications for writs of mandamus to compel the Commissioners of Fire Claims to amend their awards in certain cases, were heard together both in the lower court and in this court on appeal.

Much property having been destroyed in the city of Honolulu during December, 1899, and January, 1900, under or in consequence of orders of the Board of Health in suppressing bubonic plague, provision was made by Act 15 of the Laws of

1901 for the appointment of a Commission to hear and determine claims for damages for such loss of property and for the payment thereof to the amount of $1,500,000.  The respondents are the Commissioners appointed under that Act.  They have, we understand, practically completed their labors, that is to say, have heard and decided all of the nearly 7,000 claims that were presented to them but their functions have not ceased by limitation of law.

The petitioners in the second case, Sing Chan Company, presented a claim for $11,816.92 for property so destroyed, and the petitioner in the first case, the insurance company, presented a claim for $1,500 as assignee of the Sing Chan Company claim up to that amount, the insurance company having obtained the assignment upon paying Sing Chan Company that amount under a policy of insurance upon that property.

The Commission, after hearing the claims, found that the value of the property destroyed was $7,877.95, but awarded the Sing Chan Company only $4,590.85, being the total loss found, less amounts previously paid under three insurance policies on the property, and upon the award the following was noted: "This claimant having subrogated to the following insurance companies, to-wit, Liverpool & London & Globe Insurance Co., Policy 354,106, $1,500; Fireman's Fund Insurance Co., Policy 627,873, $1,000.00; Royal Insurance Co., Policy 5,853,660, $787.10; this award is hereby made subject to the subrogation of this claimant to said companies.  Less and subject to any sum or sums of money hereafter recovered or received from insurance companies on account of property destroyed by or incidental to said sanitary fires."  Upon the award in the case of the insurance company the following was noted:  No award made under Act 15 of Session Laws of 1901.  Award made to claim 4346 (Sing Chan Company) subject to subrogation; or words substantially to that effect.  The other two insurance companies likewise presented their claims to the Commission—with presumably similar results, though it is not expressly so stated.

The Circuit Judge, after a hearing on demurrer in each case,

granted peremptory writs of mandamus directing the Commission to amend its awards so as to allow the insurance company the amount of its assignment, $1,500, and the Sing Chan Company, $4,590.85 without lien or subrogation. The respondents appealed.

The insurance company does not rely upon an independent cause of action of its own or a claim for damages caused to it by the orders of the Board of Health. It could not, for such damages would be too remote under the general law (see *Conn. Mut. Life Ins. Co. v. N. Y. & N. H. R. R. Co.*, 25 Conn. 265, 274) even if the Territory were suable in tort in the regular courts, which is not the case (*Coffield v. Territory*, 13 Haw. 478), and the statute in question (Section 7) expressly prohibits awards for "consequential damage" and limits allowable damages to loss "for the destruction of or direct damage to property."

Nor does the insurance company rely on a right of subrogation independent of the express assignment, although (fire insurance being, like marine insurance, a contract of indemnity, and not, like life insurance, a contract to pay a definite sum upon the happening of a particular event) the company upon paying the insurance would, in the absence of an express assignment, be subrogated, in a corresponding amount, to the insured's right, if any, against the wrongdoer responsible for the loss. *St. Louis &c. R'y. v. Commercial Ins. Co.*, 139 U. S. 223, 235; *Darrell v. Tibbetts*, L. R. 5 Q. B. D. 560.

The company relies entirely on the express assignment, that is, upon its rights as an assignee of a portion of the claim of the insured.

The claim on behalf of the insurer was disallowed in both cases, and, therefore, in view of our conclusion that we cannot in proceedings of this kind review and correct the decision of the Commission upon this point, assuming it to be erroneous, it will be sufficient for the disposition of both cases if we state our reasons in the case of the owners alone.

We take it that the petitioners would be satisfied with either

an award to the insured of the total loss less the amounts paid by the insurers, provided the latter amounts were awarded to the insurers; or an award of the total loss to the insured subject to the assignments to the insurers, provided no awards were made directly to the latter, in other words, that the petitioners do not expect several awards exceeding in the aggregate the total loss, although they so prayed both before the Commission and before the Circuit Judge. Accordingly there can be no serious objection to the note made on the award to the owners, Sing Chan Company, to the effect that that award was subject to the assignments to the insurance companies. The serious objection to that award, from the standpoint of the petitioners, is that it was not for the full amount of the loss, not that it was subject to the assignments. No doubt it was unnecessary for the Commission to note that the award was subject to the assignments and it might have been better not to have done so, for the insured and insurers could settle their claims as against each other between themselves; and the Commission was authorized under the statute to make awards for "direct damage to property" and not to adjudicate conflicting claims to the amounts awarded.

As already stated the real question of importance to the petitioners, is whether the award to Sing Chan Company should have been for the full loss, $7,877.95, or was properly made for that amount less the amounts paid by the insurers. But we need not undertake to decide this question, inasmuch as, in our opinion, set forth below, this court could not properly in a proceeding of this kind review and correct the action of the Commission even if it erred in its decision of this question. And yet we may be justified in stating some of the considerations that bear upon the question, partly for the purpose of throwing light upon it, especially in view of the arguments pro and con presented by counsel, and partly for the purpose of showing to some extent that the question is one of such a nature that it should not be decided in a proceeding of this kind.

Of course, if the statute clearly showed that the legislature

intended that the amounts paid by insurance companies should be deducted, that would end the matter; for, since the government cannot be sued at all without its consent, it may consent to be sued or to allow claims to be presented or awarded against it to only such extent as it pleases. The only reference to insurance in the statute is found in the provision in Section 9 that the claimant should state, among other things, "the amount for which the property was insured, the name of the insurer, and how much was paid thereon." The insertion of this provision can be accounted for on several theories. If the legislature intended by it that amounts paid by insurers should be deducted from owners' claims, it did not clearly express its intention.

Assuming that the question is not settled by the statute, its solution might depend upon whether the owners would be obliged as matter of law to reimburse the insurance companies out of the amounts received under the award of the Commission. If they would, then justice would seem to require that the full amount of the loss without deducting the insurance should be awarded; for otherwise the amounts of insurance would be in effect deducted twice and the owners would not be fully compensated for their loss. They would be discriminated against as compared with others and would better not have had insurance. And the general rule is that in actions by the owners against those who caused the loss, the measure of damages is the entire loss without deduction of amounts previously received from insurers. *Weber v. Morris &c. R. R. Co.*, 35 N. J. L. 402; see also *Pentz v. Receiver's*, 3 Edw. Ch. 341; 9 Paige 568. But if the owners would not as matter of law be bound to reimburse the insurers, it could be argued with a good deal of force that they could not justly complain if the amounts already received by them from the insurers were deducted, for they would be fully compensated—in part by the insurers and as to the rest by the government.

It would be under the express assignments or because of the nature of the contract of insurance as one of indemnity that the

owners would have to reimburse the insurers, if at all.  As to
the assignments, if the owners made those voluntarily, whether
for a consideration or not, that was their own affair and the
government could not be expected to take such assignments into
consideration any more than if they had been made to any others
than the insurers.   The owners could not enlarge the govern-
ment's liability by their own voluntary acts.   And there is no
showing in this case that they were obliged by the terms of
their policies to make such assignments.   As to the obligation,
if any, of the owners to reimburse the insurers because of the
nature of the contract as one of indemnity,—if there was no
legal liability on the part of the government, as, for instance, if
the orders of the Board of Health in consequence of which the
fires occurred were legal under the circumstances or if the loss
of property in question was not the proximate result of those
orders, the owners would have no legal right as against the gov-
ernment (apart from the question of the right to sue the gov-
ernment) and therefore the insurers could have no rights by
way of subrogation.   But, of course, we could not properly in ·
this proceeding go into the questions of proximate cause or of
the legality of the orders of the Board of Health, even if the
facts were before us.   And the government has never so far as
we are aware acknowledged a legal liability.   It has apparently
proceeded on the theory that the claims provided for were moral-
ly, if not legally, good and that it was only right that the public,
for whose benefit the losses were incurred, should share them
with the immediate sufferers.   But, even if the insurers had no
rights of subrogation based on the liability of the government,
still, if the government should in fact compensate the owners,
even though gratuitously on the theory of a moral obligation or
by way of compromise or otherwise, might not the contract of
insurance as one of indemnity give the insurers a right to re-
imbursement by the owners?   And yet, if that would be so in
case the owners were paid in full, would it be so in case the gov-
ernment, acting gratuitously, compensated the owners in part
only, expressly disallowing the amounts paid by the insurers, so

that the owners would be no more than fully compensated by the government and the insurers together? Enough has been said to show that nice questions of law are involved and perhaps of fact and that we should have to decide some of these and practically entertain an appeal from the Commission in order to correct their award in the manner desired.

Assuming that the Commissioners erred in their views on these questions and that the award should have been for the full amount without deducting the insurance, can we at all, or at least by mandamus, review and correct their award, or must not the petitioners be left to pursue some other remedy, if any, in the courts or their remedies of persuading, if possible, the Commission or the legislature to grant the desired relief?

It is conceded that ordinarily certiorari would be the proper remedy to correct a judgment or award in a case of this kind, but it is contended that our statute (Civ. L., Sec. 1614) limits the scope of that remedy to such an extent as to make it inapplicable to this case and (*Id.*, Sec. 1600 *et seq.*) enlarges the scope of the remedy by mandamus so as to make it applicable. We need not express an opinion upon the scope of the statute in these respects. But it may not be out of place to remark that this court has in a number of cases followed the rule that prevails in most jurisdictions, that, although an inferior court may be compelled to hear and decide a matter, it cannot be compelled by mandamus to decide it in a particular way. And the mere fact that there is no other remedy is not sufficient to justify the court in proceeding by mandamus. *Ex parte Newman*, 14 Wall 152; *In re Rice*, 155 U. S. 396. It is contended, however, that it is sought here, not to control the Commission in the exercise of its judicial functions, but merely to compel it to enter an award in accordance with its own findings of fact. That was the contention in *Ex parte Morgan*, 114 U. S. 174 ,but the court held it not a proper case for mandamus. The Commission has already acted in these cases. We are asked, not to compel it to act or even to correct mere clerical mistakes or oversights, but to come

to a different conclusion or to make an award different from what they deliberately decided upon.

In our opinion the statute under which the Commission acted made its decisions final and not subject to review by the courts. The courts might interfere if the Commission declined to hear and decide a claim that was properly presented to it or if it attempted to act beyond its jurisdiction, but they cannot review and correct its awards made within the scope of its jurisdiction. The statute (Section 6) provides that, "its judgments shall be final and no appeal lie therefrom." The Circuit Judge held that if this provision were to be so construed it would be unconstitutional or rather contrary to the provisions of the Organic Act creating the judicial system of the Territory,—on the theory that the legislature could not create an inferior court of final jurisdiction. It is evident that, if that were the rule as to ordinary courts and cases, it would have no application to a special Commission in the nature of an auditing board, created to adjudicate claims against the government. *Peacock v. Republic*, 11 Haw. 404, 409. "The government cannot be sued except by its own consent, and if it consents to be sued at all, it may do so upon such terms and conditions as it pleases." Counsel for the petitioners did not in the lower court and do not now rely much, if they do at all, on this ground upon which the Circuit Judge based his opinion. Their contention is that by the established principles of the common law the courts have jurisdiction to review the judgments of inferior tribunals by certiorari or mandamus where no appeal or writ of error lies.

Words similar, at least in part, to those in question have been construed differently by different courts. For instance, in *People v. Betts*, 55 N. Y. 600, the court held that the statute in declaring that a certain appraisal should be "final and conclusive" meant, not merely that there should be no appeal technically speaking but that there should be no remedy at all by way of review and that therefore certiorari did not lie. See also *Commonwealth v. Justice*, 34 Pa. St. 156; *Auditorial Board v. Arles*, 15 Tex. 72; *Wertheimer v. Boonville*, 29 Mo.

254; *State v. Asylum St. Bridge Co.*, 63 Conn. 91. But it must be conceded that there are decisions or at least dicta tending to support the view that ordinarily such words alone are not sufficient to show an intention on the part of the legislature to preclude resort to the extraordinary writs, the presumption being strongly against such a construction. See, for example, *Rex v. Moreley*, 2 Burr. 1040; *People v. Canal Board*, 7 Lans. 220; *State v. Quaife*, 23 N. J. L. 89; *State v. Thayer*, 74 Wis. 48.

The circumstances here are different from what they were in most of the last above cited cases. Here, besides the provision that the judgments of the Commission shall be "final," there is also the provision that "no appeal (shall) lie therefrom." The word "appeal" here is not used in its technical sense. It is used in its broader sense as meaning a proceeding for reviewing and correcting the judgment of an inferior tribunal. The subject matter and language of the statute as a whole indicate an intention to avoid the formalities and delays of ordinary judicial proceedings and to have the claims adjusted by the application of horse-sense rather than of strict rules of law. Only one member of the Commission was required to be an attorney at law (Section 1), the judgments were to be final (Section 6), claims might be compromised (Section 12), issue need not be joined (*Id*), "the Commission shall not be bound to follow the rules of the common law in relation to pleadings, practice, and the admission and rejection of evidence but shall exercise its discretion therein with the view of doing justice" (Section 15), apparently claims were expected to be presented and heard at the rate of about a thousand a month as there were nearly 7,000 claims and appropriations for the expenses of the Commission were made for only six months (Section 16). It could hardly have been contemplated that this large number of claims might possibly be brought into the regular courts by mandamus or other proceedings to correct alleged errors. Then, again, the statute was not intended to provide for the adjudication of rights as between individuals or even for the adjudication of strictly legal rights

as between the government and individuals. Under such circumstances the statute making the awards final and not subject to appeal should not be construed as strictly as might otherwise be required. In *Commonwealth v. Justice, supra,* the Supreme Court of Pennsylvania said: "We are of opinion that this court has no authority to review the order or decree of the Common Pleas, for it is expressly declared to be final and conclusive, and because the case is not such a judicial one as falls necessarily within the general jurisdiction or judicial power of this court. And we do not think that this court ought to have any power over such cases; for, properly speaking, they involve no judicial question. They have no relation to the preservation or enforcement of private rights; but only to the distribution of money belonging to the state, and which it bestows upon counties and persons according to such rules, and by means of such instrumentality as it pleases. It makes the judges of the Common Pleas the functionaries for its distribution, and their decree final, and therefore we must not interfere." In *Auditorial Board v. Arles, supra,* a case in which a board created to pass upon claims against the late Republic of Texas, refused to allow a claim for interest, the court said: "Again the board having acted on the claim, and the law not providing any remedy, a mandamus ought not to have issued. The most that could be claimed on a mandamus was, that the board should act on the claim; and the fact shown in the petition, that the claim had been acted upon by the board, was sufficient ground on which the application should have been refused by the court below. It is an admitted rule that the state can be sued only by its own permission, and then in the way it has consented to be so sued. To sustain the judgment in this case would be, in effect, to sustain a suit against the state without its consent.

"If injustice has been done by the board, in rejecting the claim of interest, the claimant must rely for remedy upon the sense of the justice of the claim that the legislature may entertain on it."

The order of the Circuit Judge directing the Commission to amend its award is reversed in each case.

*Hatch & Silliman* and *F. W. Milverton* for petitioners.

*Attorney-General E. P. Dole* and *Deputy Attorney-General J. W. Cathcart* for respondents.

### CONCURRING OPINION OF PERRY, J.

I concur in the conclusion of the majority that the statute under which the Commission acted made its decisions final and not subject to review, by any method, by the courts and that this provision is not unconstitutional, and also in the reasoning in support of that conclusion. The proceedings in these two cases are but attempts to obtain a consideration by this Court of certain errors of law alleged to have been committed by the Commission and a reversal or modification of its judgments, and the orders appealed from must, therefore, be reversed and the petitions dismissed.

It is unnecessary, I think, to express an opinion upon or to enter into a discussion of any of the other questions touched upon in argument or in the opinion of the majority.