**STATE OF HAWAII ex rel. CHARLES F. MARSLAND, JR.,** Prosecuting Attorney, City and County of Honolulu, State of Hawaii, Petitioner, v. **BRUCE S. AMES**, Judge of the District Court of the First Circuit, State of Hawaii, and **ALEKI F. MAFI**, Real Party in Interest, Respondents

NO. 13324

(CASE NOS. TR20P–TR30P of 8/23/88)

MARCH 16, 1990

LUM, C.J., PADGETT, HAYASHI, AND WAKATSUKI, JJ., AND RETIRED JUSTICE NAKAMURA, ASSIGNED BY REASON OF VACANCY

**Per Curiam.** The State petitions this court for a writ of mandamus directing Judge Ames to vacate two virtually identical pretrial discovery orders issued in *State v. Mafi*, wherein Defendant Mafi is charged, *inter alia*, with Driving Under the Influence of Intoxicating Liquor (DUI), pursuant to Hawaii Revised Statutes § 291–4. The government alleges "Judge Ames clearly abused his judicial discretion and exceeded his authority" under Rule 16(d) of

the Hawaii Rules of Penal Procedure by permitting Mafi to discover 41 of 45 items he sought by means of a Written Request for Disclosure served on the State and a subsequent motion for discovery filed in district court. We agree that Judge Ames has acted beyond the scope of his jurisdiction pursuant to HRPP Rule 16 in this case and thus invoke our supervisory power over the district court to direct by mandamus that the two discovery orders entered by Judge Ames on September 1, 1988 be vacated.

## I.

The extraordinary writ of mandamus is appropriate "to confine an inferior tribunal to the lawful exercise of its proper jurisdiction[.]" *State v. Shintaku*, 64 Haw. 307, 312, 640 P.2d 289, 293 (1982). *See also In re Doe*, 67 Haw. 466, 469, 691 P.2d 1163, 1165 (1984). But "mandamus may not be used to perform the office of an appeal." *State v. Shintaku*, 64 Haw. at 310, 640 P.2d at 292 (citing *Chambers v. Leavey*, 60 Haw. 52, 57, 587 P.2d 807, 810 (1978)). Thus, we must at the outset determine whether the State may have a remedy by way of an appeal or any other means of relief from the disputed discovery orders.

"[T]he right of appeal in a criminal case is purely statutory and exists only when given by some constitutional or statutory provision." *State v. Oshiro*, 69 Haw. 438, 441, 746 P.2d 568, 570 (1987). *See also State v. Shintaku*, 64 Haw. at 310, 640 P.2d at 292; *State v. Johnson*, 50 Haw. 525, 526, 445 P.2d 36, 37 (1968). HRS § 641–13 confers this right on the State in nine instances, which do not, however, include pretrial discovery orders.[1] Thus, the State is without a remedy from the September 1, 1988 discov-

---

[1] HRS § 641–13 reads:

An appeal may be taken by and on behalf of the State from the district or circuit courts to the supreme court, subject to chapter 602, in all criminal cases, in the following instances:

ery orders issued by Judge Ames, unless this court grants its petition for extraordinary relief.

But "[t]he mere fact that other remedies are not available has never in itself been sufficient justification for mandamus." *State v. Shintaku*, 64 Haw. at 311, 640 P.2d at 293 (citing *In re Application of Liverpool*, 14 Haw. 481, 488 (1902)). And "[w]here the trial judge has discretion to act, . . . mandamus clearly will not lie to interfere with or control the exercise of that discretion, even where the judge has acted erroneously, . . . unless . . . the judge has exceeded his jurisdiction, has committed a flagrant and manifest abuse of discretion, . . . or has refused to act on a subject properly before the court where it was under a legal duty to act." *Id.* at 312–13, 640 P.2d at 293–94. *See, e.g., In re Doe*, 67 Haw. 466, 691 P.2d 1163 (1984); *State ex rel. Marsland v. Town*, 66 Haw. 516, 668 P.2d 25 (1983).

---

(1) From an order or judgment quashing, setting aside, or sustaining a motion to dismiss, any indictment or complaint or any count thereof;

(2) From an order or judgment, sustaining a special plea in bar, or dismissing the case where the defendant has not been put in jeopardy;

(3) From an order granting a new trial;

(4) From an order arresting judgment;

(5) From a ruling on a question of law adverse to the State where the defendant was convicted and appeals from the judgment;

(6) From the sentence, on the ground that it is illegal;

(7) From a pretrial order granting a motion for the suppression of evidence, including a confession or admission, or the return of property in which case the intermediate appellate court or the supreme court, as the case may be, shall give priority to such an appeal and the order shall be stayed pending the outcome of the appeal;

(8) From an order denying a request by the State for protective order for nondisclosure of witness for their personal safety under Rule 16(e)(4) of the Hawaii Rules of Penal Procedure, in which case the intermediate appellate court or the supreme court, as the case may be, shall give priority to such appeal and the order shall be stayed pending outcome of such appeal;

(9) From a judgment of acquittal following a jury verdict of guilty.

Upon review of the instant petition, we are persuaded that Judge Ames "has exceeded his jurisdiction" by issuing the dual discovery orders in this case and that our intervention is necessary to correct persistent misapplication of HRPP Rule 16(d) in DUI cases heard in our district courts and to establish parameters of permissible discovery in misdemeanor DUI cases. We therefore invoke our supervisory jurisdiction over the district court by authority of HRS § 602–4[2] and exercise our discretionary power to issue a writ of mandamus pursuant to HRS § 602–5(4) and (7).[3]

## II.

Disclosure in criminal cases is governed by HRPP Rule 16, which limits discovery "to cases in which the defendant is charged with a felony," HRPP Rule 16(a), except as provided in HRPP Rule 16(d). HRPP Rule 16(d) reads:

---

[2] HRS § 602–4 reads:

The supreme court shall have the general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses therein where no other remedy is expressly provided by law.

[3] HRS § 602–5 reads in relevant part:

The supreme court shall have jurisdiction and powers as follows:
. . . .

(4) To exercise original jurisdiction in all questions arising under writs directed to courts of inferior jurisdiction and returnable before the supreme court, or if the supreme court consents to receive the case arising under writs of mandamus directed to public officers to compel them to fulfill the duties of their offices; and such other original jurisdiction as may be expressly conferred by law;
. . . .

(7) To make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such steps as may be necessary to carry into full effect the powers which are or shall be given to it by law or for the promotion of justice in matters pending before it.

> Upon a showing of materiality and if the request is reasonable, the court in its discretion may require disclosure as provided for in this Rule 16 in cases other than those in which the defendant is charged with a felony, but not in cases involving violations.

Thus, discovery in a misdemeanor DUI case may be permitted by the trial judge "[u]pon a showing of materiality and if the request is reasonable," but only to the extent authorized by HRPP Rule 16 for felony cases. HRPP Rule 16(b) enumerates the items the State must disclose upon request of a defendant who is charged with a felony. It provides in relevant part:

> (1) **Disclosure Upon Written Request of Matters Within Prosecutor's Possession.** Upon written request of defense counsel, the prosecutor shall disclose to him the following material and information within the prosecutor's possession or control:
>
> (i) the names and last known addresses of persons whom the prosecutor intends to call as witnesses, in the presentation of the evidence in chief, together with their relevant written or recorded statements, provided that statements recorded by the prosecutor shall not be subject to disclosure;
>
> (ii) any written or recorded statements and the substance of any oral statements made by the defendant, or made by a co–defendant if intended to be used in a joint trial, together with the names and last known addresses of persons who witnessed the making of such statements;
>
> (iii) any reports or statements of experts, which were made in connection with the particular case or which the prosecutor intends to introduce, or which are material to the preparation of the defense and are specifically designated in writing by defense counsel, including results of physical or mental examinations and of scientific tests, experiments, or comparisons;

(iv) any books, papers, documents, photographs, or tangible objects which the prosecutor intends to introduce, or which were obtained from or which belong to the defendant, or which are material to the preparation of the defense and are specially designated in writing by defense counsel;

(v) any prior criminal record of the defendant.

. . . .

(3) **Disclosure of Matters Not Within Prosecution's Possession**. Upon written request of defense counsel and specific designation by him of material or information which would be discoverable if in the possession or control of the prosecutor and which is in the possession or control of other governmental personnel, the prosecutor shall use diligent good faith efforts to cause such material or information to be made available to defense counsel; and if the prosecutor's efforts are unsuccessful the court shall issue suitable subpoenas or orders to cause such material or information to be made available to defense counsel.

Mafi's Written Request for Disclosure, which was initially served on the State and subsequently considered by Judge Ames pursuant to a motion to compel discovery, sought 45 items from the prosecution. Judges Ames granted 41, denied three, and took no action with respect to one of the items requested.

We begin our review of Judge Ames' orders of discovery by examining seven items that appear to fall within the ambit of HRPP Rule 16. Item 1 is a list of State's witnesses, "together with their relevant written or recorded statements . . . [or] a written summary of the testimony each witness is expected to give at trial."[4] Item 2 consists of any "statements made by the Defendant together with

---

[4] 1. A written list of the names and last known addresses of persons whom the prosecutor intends to call as witnesses in the presentation of the evidence in chief together with their relevant written or recorded statements (including any notes

the names and last known addresses of persons who witnessed the making of such statements."[5] Item 3 deals with "reports or statements of experts ... including results of physical or mental examinations and of scientific tests, experiments, or comparisons."[6] Item 5 covers material "which the prosecution intends to present to the Court, or which were obtained from or which belong to the Defendant."[7] Item 6 is a request for "[a]ny prior criminal record of the Defendant or any State witness."[8] Item 30 concerns the results of the Intoxilyzer 4011AS test taken by the defendant.[9] Item 42 consists of information obtained by means of a horizontal gaze

---

made by the arresting officer(s) as well as all relevant police reports; and if no written or recorded witness statements were given, then a written summary of the testimony each witness is expected to give at trial or any other hearing in this case.

[5] 2. Any written or recorded statements and the substance of any oral statements made by the Defendant together with the names and last known addresses of persons who witnessed the making of such statements.

[6] 3. Any reports or statements of experts, which were made in connection with this case or which the prosecutor intends to introduce, or which are material to the preparation of the defense including results of physical or mental examinations and of scientific tests, experiments, or comparisons.

[7] 5. Any books, papers, documents, photographs, specimens or tangible objects which the prosecutor intends to present to the Court, or which were obtained from or which belong to the Defendant, or which are material to the preparation of the defense.

[8] 6. Any prior criminal record of the Defendant or any State witness (including the Defendant's traffic abstract) as well as copies of any warrants executed in connection with the above case(s).

[9] 30. The permanent record file for this case including the following for the Defendant/Subject:

    (1)   Analysis of a subject:

        A.   The subject's police report number;

        B.   Name of subject;

        C.   Date and time sample was taken;

        D.   Date and time analysis was done, if different from paragraph (C);

        E.   Name of the arresting officer;

        F.   Name of the test operator or analyst;

nystagmus test, if any, administered to the defendant.[10] We believe these seven items would be discoverable in misdemeanor DUI cases, in whole or in part, within the limits prescribed by HRPP Rule 16(b), provided the defendant meets the threshold requisites of HRPP Rule 16(d). Thus, Judge Ames could have compelled the State to disclose the following material upon written request from Mafi: Item 1, except for "a written summary of the testimony

---

G. Reference sample information and results;

H. If instrument records number, instrument reading number;

I. Test results.

(2) Calibration or verification of accuracy results:

A. Name of operator or analyst;

B. Reference control lot numbers, or concentrations and results; and

C. Date of calibration or verification of accuracy.

[10] 42. If the Defendant was given a horizontal gaze nystagmus test:

a. the name(s) and address(es) of the person(s) who administered the test;

b. the names and addresses of any witnesses to the test;

c. the location at which the test was given;

d. the circumstances under which the test was given;

e. any instructions, directions, manuals and correspondence relating to the administration of such a test;

f. the qualifications, training and certification of the person(s) administering the test;

g. whether the person(s) administering the test correlated the test to a particular blood–alcohol concentration and, if so, the method used to arrive at such correlation and the particular blood–alcohol concentration determined as a result;

h. all factors used by the person(s) administering the test to rule out causes of nystagmus other than blood–alcohol concentration;

i. whether the person(s) administering the test has been qualified as an expert in horizontal gaze nystagmus before any court or administrative tribunal; and if so, the name(s) of the court(s) or tribunal(s) as well as the name(s) and case number(s) of the case(s) in which the person(s) was/were so qualified[.]

each witness is expected to give at trial," which is not authorized by HRPP Rule 16(b)(1)(i); Items 2, 3, and 5 in their entirety, *see* HRPP Rule 16(b)(1)(ii), (iii), and (iv), respectively; Items 30 and 42, limited to the results of the Intoxilyzer 4011AS test and the horizontal gaze nystagmus test, if·any, taken by defendant, *see* HRPP Rule 16(b)(1)(iii).

The government avers that it "routinely and freely supplie[s]" a defendant in a DUI case "the relevant waiver forms, Intoxilyzer and/or blood test results, operational checklists, witness statements, and maintenance logs." Thus, we assume this material was disclosed to Mafi. If it was not, we believe Mafi is entitled to receive these items, even without submitting a Written Request for Disclosure or a motion to compel discovery.

But Mafi was neither entitled to nor was Judge Ames authorized to order disclosure of the additional 34 items on the list of requested materials. For not only is disclosure of these items not "provided for in . . . [HRPP] Rule 16," which is a requirement of HRPP Rule 16(d), but too discovery in a misdemeanor case that exceeds the limits of discovery established by HRPP Rule 16 for felony cases cannot be justified under the rule.

Thus, we determine that Judge Ames acted beyond the scope of his authority under HRPP Rule 16(d) when he granted Mafi's motion to compel discovery with respect to the following items:

> 4. Identification by title, journal, volume, page number, date and author of all documents (reports, forms, articles, journals, books, etc.) relied upon by the prosecution's expert regarding his opinion of the reliability of the instrument used to determine Defendant's blood–alcohol content. (Citation omitted).

> 7. A copy of the manufacturer's specifications showing and describing the components and functions of each component of the beam attenuator accessory to the Intoxilyzer 4011AS. (Citations omitted).

8. A copy of the manufacturer's specifications and any evaluations which identify the "precision limit" of the Intoxilyzer 4011AS. (Citation omitted).

9. A list of the related accessories to the Intoxilyzer 4011AS provided by the manufacturer to the Department of Health for the purpose of approval. (Citation omitted).

10. A list of any chemical reagents to the Intoxilyzer 4011AS provided by the manufacturer to the Department of Health for the purpose of approval. (Citation omitted).

11. A copy of the detailed set of instructions (including the manufacturer's specifications) pertaining to the operation, calibration, and maintenance of the Intoxilyzer 4011AS provided by the manufacturer to the Department of Health for the purpose of approval. (Citations omitted).

12. A copy of any interpretation of results for the Intoxilyzer 4011AS provided by the manufacturer to the Department of Health for the purpose of approval. (Citation omitted).

13. A copy of other material provided by the manufacturer to the Department of Health for the purpose of approval of the Intoxilyzer 4011AS as well as a statement as to whether any technical consultation was provided, and, if so, the nature of that consultation. (Citation omitted).

14. A copy of the evaluation of the Intoxilyzer 4011AS which was made by the State Department of Health as well as any other studies or evaluations of the Intoxilyzer 4011AS which are in the possession of the State. (Citations omitted).

15. A copy of the instructions of the manufacturer for the Intoxilyzer 4011AS as well as those instructions approved by the Director of Health for the analysis of Defendant's breath sample. (Citation omitted).

16. A copy of all repair, calibration, and maintenance records and memoranda (including the permanent record book and repair invoices) for the Intoxilyzer 4011AS used in this case for the 30 days preceding and 30 days subsequent to the date of the Defendant's test; and the original records for the life of the Intoxilyzer 4011AS used in this case to be made available for inspection and photocopying by Defendant's attorney. (Citation omitted).

17. A list of the methods recommended by the manufacturer and approved by the State Department of Health for the testing for accuracy or calibration of the Intoxilyzer 4011AS. (Citation omitted).

18. The method of calibration which was utilized for the Intoxilyzer 4011AS used in this case. (Citation omitted).

19. The two or more reference samples, and an identification and description of them (to include the temperature(s) of the samples and how they were verified for accuracy) employed to calibrate the Intoxilyzer 4011AS used in this case within the 30 days preceding and 30 days subsequent to the date of Defendant's test; and the results of any analyses using these samples. (Citations omitted).

20. A copy of the results of the accuracy verification test performed during the Defendant's breath test sequence for the Intoxilyzer 4011AS used in this case. (Citation omitted).

21. The technique which was employed in the preparation of the solution used as a calibration or reference standard for the Intoxilyzer 4011AS used in this case. (Citations omitted).

22. The name and address of the supervisor of breath testing instruments for the Intoxilyzer 4011AS used in this case. (Citation omitted).

23. The prescribed method by which the supervisor of breath–testing instruments for the Intoxilyzer 4011AS used in this case was qualified as a supervisor. (Citation omitted).

24. If qualification of the supervisor of breath–testing instruments for the Intoxilyzer 4011AS used in this case was by a training program, the date(s) and location of the program and a description of the program content. (Citation omitted).

25. A copy of the approval by the Director of Health of the relevant portion of the supervisor of breath–testing instrument training program by which the supervisor for the Intoxilyzer 4011AS used in this case was qualified. (Citation omitted).

26. A copy of the operator's certification card for the operator of the Intoxilyzer 4011AS used in this case. (Citation omitted).

27. The prescribed method by which the operator of the Intoxilyzer 4011AS used in this case was qualified. (Citation omitted).

28. If qualification of the operator of the Intoxilyzer 4011AS used in this case was by a training program, the date(s) and location of the program and a description of the program content. (Citations omitted).

29. A copy of the approval by the Director of the Department of Health of the relevant portion of the operator training program by which the operator of the Intoxilyzer 4011AS used in this case was qualified. (Citation omitted).

31. A copy of all reports of on–site surveys and proficiency tests made by representatives of the Director of the Department of Health relating to the supervisor of breath–testing instruments for the Intoxilyzer 4011AS used in this case. (Citation omitted).

32. A copy of all applications for individual permits and renewals on the forms prescribed and provided by the Department of Health made by the supervisor of breath–testing instruments for the Intoxilyzer 4011AS used in this case. (Citation omitted).

33. A copy of all permits and renewals issued to the supervisor of breath–testing instruments for and the operator of the Intoxilyzer 4011AS used in this case. (Citation omitted).

34. A copy of the sets of forms containing the names and installation addresses of persons to whom permits were issued by the appropriate Chief of Police and which were submitted to the Department of Health for the three years preceding the date of Defendant's arrest. (Citations omitted).

35. A copy of all permit revocations for the three years preceding the date of Defendant's test, a statement of when the supervisor of breath–testing instruments for and the operator of the Intoxilyzer 4011AS used in this case were required to determine accuracy in the analysis of proficiency testing samples provided by the Department of Health, and all results of such accuracy tests. (Citation omitted).

36. A copy of all manuals, instructions, directives, notices, and bulletins from the manufacturer or anyone else in the possession of, or utilized by, the prosecution, the police (including the crime laboratory), and the Department of Health for the operation, calibration, maintenance, repair, and/or evaluation of the Intoxilyzer 4011AS and not otherwise requested in a preceding paragraph of this letter.

37. A copy of the breath analyzer log for the twenty (20) prior and twenty (20) subsequent test results to

Defendant's test for the Intoxilyzer 4011AS used in this case.

38. A copy of the test record cards for the five prior and five subsequent tests to Defendant's test for the Intoxilyzer 4011AS used in this case.

39. A copy of all records, reports, studies, notes, and correspondence in possession of the prosecution, the police (including the crime laboratory), and the Department of Health relating to any testing of the Intoxilyzer 4011AS for electromagnetic interference (including radio frequency interference); and, if there was such testing, the date of the testing, the circumstances under which the testing was done, and the results of the tests.

43. The names and addresses of all persons known to the prosecution or the police to have been in a position to observe or hear Defendant anytime during his stop or three hours thereafter as well as the jail log(s) at Defendant's place(s) of confinement for the three hours following Defendant's booking. (Citation omitted).

The petition is hereby granted and Judge Ames is directed to vacate the Order Granting and Denying in Part Defendant's Motion to Compel Discovery and the Order Granting Defendant's Motion to Compel Discovery, or in the Alternative to Dismiss, filed on September 1, 1988.

*Thomas C. Koenig*, Deputy Prosecuting Attorney, on the writ for petitioner.

*Steven T. Barta*, contra, for Respondent Mafi.