RUSSELL PELEKAI, Petitioner–Appellant, v. **JUDGE IWALANI D. WHITE**, Judge of the District Family Court of the First Circuit, and **JUDGE FRANCES Q.F. WONG**, Judge of the Family Court of the First Circuit, and **STATE OF HAWAIʻI**, by the Office of the Prosecuting Attorney for the City and County of Honolulu, Respondents–Appellees

NO. 17092

(FC–CR. NO. 93–2193)

NOVEMBER 16, 1993

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, AND RAMIL, JJ.

*Per Curiam.* In this original proceeding, Petitioner Russell Pelekai (Petitioner) seeks the issuance of a writ of mandamus and/or prohibition (1) directing Respondent, the Honorable Judge Iwalani D. White, Judge of the District Family Court of the First Circuit (trial judge), to set aside Petitioner's bail in FC–CR. No. 93–2193, and (2) directing Respondent, the Honorable Judge Frances Q.F. Wong, Senior Judge of the Family Court of the First Circuit (senior judge), to rescind the May 3, 1993 Family Court Order Establishing Bail Schedule (Bail Schedule) that is being followed in all cases in which a person is arrested and charged with abuse of a household member.

Upon review of the disputed bail schedule and the relevant bail setting statutes, we conclude that the senior judge was without authority to promulgate the family court bail schedule and that the trial judge abused her discretion by following the schedule without considering relevant statutory criteria. Accordingly, we vacate the Bail Schedule and direct the trial judge to hold a hearing to reconsider Petitioner's bail in light of the relevant statutes.

## I.

Prior to May 3, 1993, bail for persons arrested for Abuse of a Household Member in violation of Hawai'i Revised Statutes (HRS) § 709–906 (Supp. 1992)[1] was usually set at $50.00 by the Honolulu Police Department (HPD). On May 3, 1993, the senior judge issued the order establishing the Bail Schedule, which set the bail for persons charged with abuse of a household member as follows:

IT IS HEREBY ORDERED that the following standards be followed in the initial setting of Bail

---

[1] **HRS § 709–906 Abuse of family and household members; penalty.** (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member, or to refuse compliance with the lawful order of a police officer under subsection (4) . . . .
. . . .

(5) Abuse of a family or household member, and refusal to comply with the lawful order of a police officer under subsection (4) are misdemeanors and the person shall be sentenced as follows:

(a) For the first offense the person shall serve a minimum jail sentence of forty–eight hours; and

(b) For a second offense and any other subsequent offense which occurs within one year of the previous offense the person shall be termed a "repeat offender" and serve a minimum jail sentence of thirty days.

for both first offenses and subsequent offenses of Section 709–906 of the Hawai'i Revised Statutes:

| | | |
|---|---|---|
| 1) | $500.00 | Standard Bail. |
| 2) | $700.00 | Where there have been any prior arrests for alleged violence against the present or any other victim. |
| 3) | $900.00 | Where the appointed officer of the Honolulu Police Department has any other concerns regarding the safety of prospective witnesses or the community as reflected by the Defendant's words or conduct. |

Petitioner was arrested and charged with abuse of a household member after the Bail Schedule was implemented. Because this was Petitioner's first arrest, HPD, in compliance with the Bail Schedule, set Petitioner's bail at $500.00. Petitioner, unable to post the bail, was held in custody at HPD and brought to the arraignment and plea on the following day. When Petitioner appeared before the trial court, he pled not guilty and requested a jury trial. At his arraignment, Petitioner moved for a reduction of bail, citing the following reasons: (1) Petitioner had never been arrested before for any offense; (2) he had lived in Hawai'i all of his life and had immediate family members who lived in Waianae and Wahiawa; (3) although he had been unemployed for three months, Petitioner had a job interview on the day of his arraignment; and (4) prior to being unemployed, Petitioner had worked three years for the same company.

The trial court ruled that the Bail Schedule prescribed the standard bail in spouse abuse cases and denied the

motion for bail reduction. When asked if she was relying solely on the Bail Schedule, the trial judge stated that she was not. She further stated that "[t]his man has been unemployed for three months. He's been living with his parents. This is his first adult arrest; [it is] unknown whether he has a prior history as a juvenile."

After defense counsel asked whether the trial court was concerned that Petitioner was a flight risk, the following exchange ensued:

| | |
|---|---|
| The Court: | And bail is set in the amount of five hundred dollars. *That is regular bail. I do not have to make a finding unless I'm going to deviate from the bail schedule.* It's not as far as I understand it. |
| Defense Counsel: | So it's the Court's understanding that it does not have to issue any findings with respect to whether there is a flight risk or cannot be assured as to his appearance in Court or any kind of safety — |
| The Court: | He's unemployed — |
| Defense Counsel: | — to the complaining witness? |
| The Court: | — for three months, plus *there is the bail order issued by Judge Wong setting first time arrest [sic] at five hundred dollars.* . . . |

(Emphasis added.)

Unable to post bail, Petitioner was incarcerated for approximately two weeks before bail was posted by family members. While in custody, Petitioner filed the instant petition.

## II.

"This court has consistently held that a writ of mandamus and/or prohibition is an extraordinary remedy which will not issue unless the petitioner demonstrates (1) a clear and indisputable right to relief and (2) a lack of other means to adequately redress the alleged wrong or obtain the requested action." *Breiner v. Takao*, 73 Haw. 499, 502, 835 P.2d 637, 640 (1992) (citing *State v. Oshiro*, 69 Haw. 438, 441, 746 P.2d 568, 570 (1987)). Such writs are not meant to supersede the legal discretionary authority of the lower courts, nor are they meant to serve as legal remedies in lieu of normal appellate procedures. *See State ex rel. Marsland v. Town*, 66 Haw. 516, 668 P.2d 25 (1983). Where a trial court has discretion to act, mandamus will not lie to interfere or control the exercise of that discretion, even when the judge has acted erroneously, unless the judge has exceeded his or her jurisdiction, has committed a flagrant and manifest abuse of discretion, or has refused to act on a subject properly before the court where it is under a legal duty to do so. *State ex rel. Marsland v. Ames*, 71 Haw. 304, 307, 788 P.2d 1281, 1283 (1990) (citations omitted). Mandamus is an appropriate remedy where, as in this matter, a court acts in contravention of statute and the petitioner has no appropriate remedy by way of appeal.

## III.

Petitioner contends the disputed bail order: (1) contravenes HRS §§ 804–5 and 804–9 (1985); (2) violates the

prohibition against excessive bail contained in the eighth amendment to the United States Constitution and article 1, section 12 of the Hawai'i Constitution; and (3) violates the equal protection clause of the fourteenth amendment to the United States Constitution and article 1, section 5 of the Hawai'i Constitution. In addition, Petitioner contends that the trial judge manifestly abused her discretion by rigidly adhering to the Bail Schedule.[2]

## A. The Bail Schedule Contravenes The Controlling Bail Statutes.

HRS ch. 804 governs bail in criminal cases. HRS § 804–5 designates the persons who may admit an accused to bail[3] and provides as follows:

> **By whom allowed.** In cases where the punishment for the offense charged may be imprisonment for life not subject to parole, or imprisonment for a term of more than ten years with or without a fine, a judge or justice of a court of record, [other than a district court judge,] shall be

---

[2] Inasmuch as we have determined that the Bail Schedule was implemented in contravention of the controlling statutes, it is unnecessary for us to consider whether the bail set in the instant case was constitutionally excessive. However, unless there are extenuating circumstances, $500.00 as minimum standard bail in all first–time misdemeanor abuse of household member cases appears to be unreasonable. Additionally, it is unnecessary for us to consider Petitioner's equal protection arguments.

[3] "Bail" includes release on one's own recognizance, supervised release, and conditional release. HRS § 804–3(a) (Supp. 1992). The right to release before trial is conditioned upon the accused giving adequate assurance that he will stand trial and submit to judgment if found guilty. *Sakamoto v. Chang*, 56 Haw. 447, 451, 539 P.2d 1197, 1200 (1975) (citing *Stack v. Boyle*, 342 U.S. 1 (1951)); *see also* HRS § 804–1.

competent to admit the accused to bail, in confor-
mity with sections 804–3 to 6. In all other cases
the accused may be so admitted to bail by any
judge or justice of a court of record, [including
a district judge,] and *in cases where the punish-
ment for the offense charged may not exceed two
years' imprisonment with or without a fine, the
sheriff, the sheriff's deputy, the chief of police or
any person named by the chief of police, or the
sheriff of Kalawao, regardless of the circuit within
which the alleged offense was committed, may
admit the accused person to bail.*

(Emphasis added and brackets in original.)

Pursuant to HRS § 804–5, where the maximum pun-
ishment is two years or less, a circuit court judge, a district
court judge, *the chief of police, or persons appointed by the
chief of police* (as well as the sheriff or sheriff's deputy or
the sheriff of Kalawao) may admit an accused to bail. In
this particular case, because the charged offense was a
misdemeanor with a maximum penalty of less than two
years, the police had the authority to set the bail for Peti-
tioner. Because HPD had the authority to admit Peti-
tioner to bail, the amount of bail rested within HPD's
discretion, as allowed by HRS § 804–9. *See also State v.
Kapoi*, 64 Haw. 130, 137, 637 P.2d 1105, 1111 (1981) (fix-
ing amount of bail subsequent to defendant's arrest for
minor offense is matter within discretion of chief of
police or his designee).[4]

---

[4] The prosecution concedes that generally the chief of police or his
designee may admit defendants charged with a misdemeanor offense to
bail, but contends that HRS § 709–906(9) (Supp. 1992) expressly
reserves the exclusive power and authority to set bail in section

HRS § 804–9 provides as follows:

> **Amount.** The amount of bail rests in the discretion of the justice or judge or the officers named in section 804–5; but should be so determined as not to suffer the wealthy to escape by the payment of a pecuniary penalty, nor to render the privilege useless to the poor. In all cases, the officer letting to bail should consider the punishment to be inflicted on conviction, and the pecuniary circumstances of the party accused.

We understand HRS § 804–9 to mean "no more than that bail shall be fixed in a reasonable amount, considering the financial status of the defendant and the punishment to be imposed upon him on conviction." *See Sakamoto v. Chang*, 56 Haw. 447, 451, 539 P.2d 1197, 1199 (1975) (interpreting the precursor to HRS § 804–9). Further, the statute grants wide discretion to the bail setting authority to balance these and other relevant factors in determining the amount of bail for the individual defendant. *Id.*[5]

---

709–906 cases to the family court. We find the prosecution's arguments to be unpersuasive and conclude that HRS ch. 804 governs the setting of bail in these cases.

[5] The prosecution argues that the disputed Bail Schedule only serves as a benchmark to determine whether bail in a particular case is reasonable, as allowed by *Sakamoto v. Chang, supra*. In *Sakamoto*, we reviewed whether bail in the amount of $300,000.00 was excessive where the defendant was charged with murder. The prosecution presented no evidence in support of the high bail, and we concluded that "to infer from the fact of indictment alone a need for bail in an unusually high amount is an arbitrary act." *Id.*, 56 Haw. at 451, 539 P.2d at 1200 (quoting *Stack v. Boyle*, 342 U.S. 1, 6 (1951)). In determining that the bail was excessive, we took judicial notice of the bail schedule on file in the circuit court and noted that "this order, at least, serves as a

Because HRS § 804–5 provides the chief of police or his designee with independent authority and discretion to admit persons charged with misdemeanor offenses, including abuse of household member offenses, to bail in accordance with HRS § 804–9, the senior judge of the family court lacked authority to issue a bail schedule divesting the police of that authority and discretion. Thus, the Bail Schedule is contrary to statute and must be vacated. The fact that this particular Bail Schedule is contrary to statute, however, does not prevent the family court or HPD from considering reasonable, suggested bail guidelines as long as it is clear that the actual setting of the amount of bail, in all instances, is within the discretion of the bail setting authority identified in HRS § 804–5 and that bail must be determined on an individualized basis as required by HRS § 804–9.

---

benchmark as to the reasonableness of bail in this case." *Id.* at 451, 539 P.2d at 1200.

Relying on the quoted language from *Sakamoto*, the prosecution contends that the Bail Schedule in the instant case serves only as a benchmark of reasonableness providing a standard that allows the judicial system to be fair to each individual and maintain consistency in the setting of bail by different family court judges. Contrary to the prosecution's argument, however, the fact that we noted that the bail schedule in *Sakamoto* served as a benchmark of reasonableness does not mean that this court put a stamp of approval on all bail schedules issued by the trial courts. In *Sakamoto*, we were not asked to determine whether the use of the particular bail schedule in question was violative of the prevailing bail statutes. Further, we did not make a general pronouncement regarding the reasonableness of all standard bail schedules. Instead, we merely noted that the bail schedule on file in the circuit court served as a benchmark of reasonableness in that particular case.

## B. The Trial Court's Adherence To The Bail Schedule Was A Manifest Abuse Of Discretion.

Petitioner also contends the trial judge abused her discretion by rigidly following the Bail Schedule. We agree and conclude that the use of the instant Bail Schedule is analogous to the use of the family court sentencing guidelines struck down by this court in *State v. Nunes*, 72 Haw. 521, 824 P.2d 837 (1992).

In *Nunes*, the trial judge, after the defendant was convicted of abuse of a household member, imposed a sentence of thirty days "in accordance with the guidelines set up by Family Court in household abuse cases . . . ." *Id.* at 522–23, 824 P.2d at 838 (emphasis deleted). The guidelines referred to were promulgated by another family court judge for use by all family court judges. *Id.* at 523, 824 P.2d at 838. In striking down the sentencing guidelines, we held that where the legislature vested the trial courts with discretion to impose a sentence, rigidly adhering to sentencing guidelines promulgated without legislative authority was an abuse of discretion. *Id.* at 524, 824 P.2d at 839. If the family court believed that additional sentencing guidelines were necessary, we urged that the family court propose additional guidelines to the legislature for enactment to ensure that such guidelines received the scrutiny of the bar and the public.

Like the trial judge in *Nunes*, the trial judge in the instant case had the discretion to reset bail for Petitioner when he appeared before her. By rigidly following the Bail Schedule, the trial judge substituted the Bail Schedule for the discretion vested in her by statute and, in doing so, abused her discretion.

The prosecution contends that the Bail Schedule is distinguishable from the family court sentencing guide-

lines addressed in *Nunes*. The prosecution argues that, unlike the trial court in *Nunes*, the trial court in the instant case did not adhere inflexibly to the Bail Schedule. The prosecution further argues that *Nunes* did not prohibit the *use* of guidelines, but merely prohibited the *inflexible adherence* to such guidelines.

Despite the prosecution's arguments, we believe that the family court sentencing guidelines in *Nunes* and the Bail Schedule are indistinguishable. Both were promulgated without legislative authority and were substituted for the exercise of the trial court's discretion. Although the prosecution argues that the trial court did not adhere inflexibly to the bail schedule,[6] we conclude that the Bail Schedule was utilized as a *standard* to set bail in lieu of the discretion accorded the bail setting authority by HRS § 804–9.

It is clear that the trial court has the authority and discretion to reset bail for individual defendants appearing before it in each case. Thus, in the instant case, it was an abuse of discretion for the trial court to utilize the Bail Schedule as the *standard* by which to determine whether to grant Petitioner's request for reduction of bail.

---

[6] The prosecution reaches this conclusion because, out of fifty–four defendants appearing before the trial judge in a four–day period, the trial judge confirmed bail only as to forty–three, with fourteen defendants released to post bail within two to six weeks. The trial judge reduced bail for nine defendants to $250.00 and released them to post bail within two to six weeks. Bail for one defendant was reduced to $50.00. Where the trial court released the defendants on their own recognizance in order to post bail at a later time, it is unclear why the higher bail was required at all unless the trial court felt compelled to keep the higher bail in place. In any event, it is clear from the record that the trial court always used the Bail Schedule order as the *standard* for bail in these cases.

IV.

For the foregoing reasons, we vacate the May 3, 1993 Family Court Order Establishing Bail and remand this matter to the trial court for a hearing to reconsider Petitioner's bail.

On the briefs:

*Todd W. Eddins* and *Theodore Y.H. Chinn (Richard W. Pollack,* Public Defender), Deputy Public Defenders, for petitioner–appellant Russell Pelekai.

*Steven S. Alm*, *Kathleen M. Sato*, and *Charlotte J. Duarte (Keith M. Kaneshiro*, Prosecuting Attorney), Deputy Prosecuting Attorneys, for respondent–appellee State of Hawai'i.