921 P.2d 108

**STATE of Hawai'i ex rel. Keith M. KANE-SHIRO, Prosecuting Attorney, City and County of Honolulu, Petitioner,**

v.

**Wendell Kaipo HUDDY, Judge, Circuit Court of the First Circuit, State of Hawai'i, Respondent, and Garreth A. Graham, Defendant–Respondent.**

No. 19863.

Supreme Court of Hawai'i.

July 1, 1996.

Reconsideration Denied July 12, 1996.

---

Maurice M. Arrisgado, Deputy Prosecuting Attorney, on the briefs, Honolulu, for petitioner.

Earle A. Partington of Partington & Foley, and Pamela O'Leary Tower, on the briefs, Honolulu, for defendant-respondent.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

PER CURIAM.

Petitioner State of Hawai'i sought a writ of mandamus directing the trial judge (hereinafter "Respondent Judge") in *State v. Graham*, Cr. No. 94–1048 (1st Cir. Haw. heard May 15, 1996) (granting motion to exclude testimony of state's expert Vincent Di Maio or, in the alternative, to continue trial week), to (1) vacate his oral ruling

granting Defendant-Respondent Garreth A. Graham's motion to exclude the testimony of the State's proposed expert, Dr. Vincent Di Maio, and (2) grant an emergency stay of the proceedings in Graham's criminal trial. On May 21, 1996, we issued an order (1) requesting an answer or answers to the petition, as well as any supplemental memorandum or other supplemental materials that the State wished to file, and (2) staying the criminal proceedings pending review of the petition. After reviewing the memoranda and supplemental materials submitted by the parties,[1] we granted the State's petition on May 31, 1996, thereby vacating the Respondent Judge's oral order and dissolving the temporary stay. Today's opinion clarifies the trial court's authority to strike a witness as a sanction for failing to comply with Hawai'i Rules of Penal Procedure (HRPP) Rule 16.[2]

## I. BACKGROUND

On May 17, 1994, Graham was indicted for the murder, attempted extortion, and kidnapping of Ming Li Chang, the wife of a Honolulu physician. Graham allegedly kidnapped Mrs. Chang on the morning of May 5, 1994, bound her eyes and mouth, and attempted to

---

1. The Respondent Judge elected not to participate in this proceeding under Rule 21(c) of the Hawai'i Rules of Appellate Procedure (HRAP). Furthermore, Graham's assertion that he should have been labeled as the "Real Party in Interest" is without merit. *See* HRAP Rule 21(c) ("All parties below other than the petitioner shall be deemed respondents for all purposes.").

2. HRPP Rule 16 provides in pertinent part:

   **(b) Disclosure by the Prosecution.**
   (1) *Disclosure of Matters Within Prosecution's Possession.* The DPA shall disclose to the defendant's attorney the following material and information within the DPA's possession or control:
   (i) the names and last known addresses of persons whom the DPA intends to call as witnesses in the presentation of the evidence in chief, together with their relevant written or recorded statements, provided that statements recorded by the DPA shall not be subject to disclosure;
   . . .
   (iii) any reports or statements of experts, which were made in connection with the particular case or which the prosecutor intends to introduce, or which are material to the preparation of the defense and are specifically designated in writing by defense counsel, including results of physical or mental examinations and of scientific tests, experiments, or comparisons;
   (3) *Definition.* The term "statement" as used in subsection (b)(1)(i) and (c)(2)(i) of this rule means:
   (i) a written statement made by the witness and signed or otherwise adopted or approved by the witness; or
   (ii) a stenographic, mechanical, electrical or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by the witness and recorded contemporaneously with the making of such oral statement.
   **(c) Disclosure by the Defendant.**
   . . . .

   (2) *Disclosure of Materials and Information.* The defendant shall disclose to the DPA the following material and information within the defendant's possession or control.
   . . .
   (ii) any reports or statements of experts, including results of physical or mental examinations and of scientific tests, experiments or comparisons, which the defendant intends to introduce as evidence at the trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to that witness' testimony;
   . . . .
   **(e) Regulation of Discovery.**
   (1) *Performance of Obligations.* . . . [T]he prosecution shall disclose all materials subject to disclosure pursuant to subsection (b)(1) of this rule to the defendant or the defendant's attorney within ten (10) calendar days following arraignment and plea of the defendant. The parties may perform their obligations of disclosure in any manner mutually agreeable to the parties. . . .
   (2) *Continuing Duty to Disclose.* If subsequent to compliance with these rules or orders entered pursuant to these rules, a party discovers additional material or information which would have been subject to disclosure pursuant to this Rule 16, that party shall promptly disclose the additional material or information, and if the additional material or information is discovered during trial, the court shall be notified.
   . . . .
   (9) *Sanctions.*
   (i) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or an order issued pursuant thereto, the court may order such party to permit the discovery, grant a continuance, or it may enter such other order as it deems just under the circumstances.
   (ii) Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court.

induce Dr. Chang to pay $45,000.00 in ransom. After several continuances, Graham waived jury trial, and his trial was set to commence before the Respondent Judge on May 21, 1996.

The only issue in the criminal case is whether Graham is guilty of murder or manslaughter. In his memorandum in opposition to the State's petition, Graham acknowledges that he has already "confessed to manslaughter as well as kidnapping and attempted extortion." It is undisputed that Mrs. Chang died of asphyxia, but the mechanism or means by which the asphyxia occurred is contested. The prosecution previously disclosed to the defendant its intention to call medical examiner Kanthi De Alwis, M.D., as an expert witness to testify that the cause of death was asphyxia by suffocation. Some time in 1995, the defense advised the deputy prosecuting attorney (DPA) that Terrance Allen, M.D., had been retained as an expert witness and that Dr. Allen would testify that Mrs. Chang died of positional asphyxia. However, in February 1996, the defense notified the DPA that John Hardman, M.D., had been retained to testify in place of Dr. Allen after the latter expert declined to testify. Defense counsel avers that he has repeatedly advised the DPA that Dr. Hardman would testify that there was insufficient data to determine the means or mechanism of Mrs. Chang's death—i.e., the cause of death could have been either suffocation, positional asphyxia, "fright," or congestive heart failure. However, the DPA contends that 1) defense counsel merely informed him, during their initial conversations, that Dr. Hardman had been retained and would be rendering a report, a copy of which would be provided to the prosecution, and 2) approximately two weeks prior to the May 15 hearing on Graham's motion to exclude Dr. Di Maio's expert testimony, defense counsel stated that Dr. Hardman believed that congestive heart failure was the cause of death.[3]

Between February and April 1996, defense counsel made repeated, but unsuccessful, requests of Dr. Hardman for the report he had "promised." Sometime in April 1996, Dr. Hardman faxed a document to defense counsel, which the latter described as a "totally useless document" containing "some thoughts without any conclusions ... [or] findings[.]" According to the DPA, Dr. Hardman or his secretary informed him that the document was destroyed in accordance with defense counsel's instructions. Defense counsel avers that Dr. Hardman told him to throw the document away. In any event, the document was never disclosed to the DPA, and he did not learn of it until May 14, 1996, when Dr. Hardman's secretary returned one of the DPA's telephone calls.[4]

The DPA avers that, between February and April 1996, he consulted with Dr. De Alwis regarding the defense's likely position

---

**3.** Several supplemental materials provided by the DPA confirm that he understood the situation to be as represented to the court at the May 15 hearing. In a letter to Dr. Di Maio, dated May 6, 1996, the DPA wrote that

> [the m]ost important [trial issue] is cause and mechanism of death (suffocation due to closure of airways by tape or "positional asphyxia" as suggested by defense pathologist). Interestingly, we are still awaiting the "promised" report of the defense pathologist.... All we are getting is pronouncements for [sic] the defense attorney. Last week he added that Dr. Hardman stated that cause of death was "congestive heart failure!"

In a May 29, 1996 affidavit, the DPA avers that the defense first advised him sometime in mid-April that Dr. Hardman believed that Dr. De Alwis's conclusion was without support in the autopsy report. In an April 17, 1996 letter inquiring whether Dr. Di Maio would be available to assist the prosecution either as a consultant or

as an expert witness, the DPA suggested that the defendant's witness would "testify that the mechanism which caused Mrs. Chang's death was 'positional asphyxia' and not 'closure of the airways.'" The stated reason for the DPA's May 6, 1996 request for payment of expert witness consultation fees was to "[d]etermine cause of death and mechanism (rule out "psn. asphyxia", congestive heart failure). Confirm/corroborate death due to suffocation (blockage of airways by tape)."

**4.** The DPA asserts that he did not attempt to call Dr. Hardman until May 1996, or file a motion to compel, in reliance upon defense counsel's assurances that a report would be provided. See HRPP Rule 16(c)(2)(ii) (requiring the defendant to disclose reports prepared by expert witnesses that the defendant intends to call at trial where the reports relate to the witness' testimony). Moreover, Dr. Hardman did not return the DPA's calls himself until after defense counsel "prevailed upon him to call[.]"

at trial—*viz.*, initially, that the cause of Mrs. Chang's death was positional asphyxia rather than asphyxia by suffocation, and later, that congestive heart failure was the cause. After defense counsel informed the DPA that Dr. Hardman believed that Dr. De Alwis's conclusion of death by suffocation was without support in the autopsy, Dr. De Alwis recommended that the DPA request Dr. Di Maio's assistance. On April 24, 1996, the DPA requested early designation of a trial judge "to resolve pretrial matters ... [including] evidentiary matters such as the admissibility of ... expert medical testimony[,] ... [which would] facilitate the scheduling of ... expert witnesses for trial."

By fax letter dated April 29, 1996, Dr. Di Maio affirmatively responded to the DPA's April 17, 1996 letter of inquiry. *See supra* note 3. One week later, on May 6, 1996, the DPA obtained authorization for payment of expert witness consultation fees. A mere four days after that, during a scheduled pretrial conference on May 10, 1996, the DPA announced his intention to call Dr. Di Maio as an expert witness. Defense counsel objected and filed a motion to exclude Di Maio's testimony or to continue the trial. During a hearing held on May 15, 1996, defense counsel asserted that allowing Dr. Di Maio to testify would substantially delay the trial,[5] that the indigent defendant would have to apply for court approval to hire a similarly prominent expert for rebuttal, and that the DPA had offered no meaningful explanation for failing to retain Dr. Di Maio until ten days before trial.

The court subsequently stated:

In the area of experts, unfortunately, Rule 16 of the [HRPP] does not pattern the [Hawai'i] Rules of Civil Procedure; and there's no requirement for an expert

to disclose in writing the expert's opinions, as well as the bases of the opinions.

But apparently from this record, Dr. Hardman represented to defense counsel that the unwritten report was forthcoming and defense counsel so represented to the prosecution. And at this stage, we don't have a written report.

*The Court believes that at some point, the prosecution should have realized that it was not going to have a report or one would not be forthcoming in a timely manner. And the prosecution at that point I believe should have attempted to contact Dr. Hardman to elicit opinions from the doctor on the bases for those opinions even though not in written form.* That the prosecution failed to do so in this case.

Now, these are the options that this Court has. I can continue the trial. We've been waiting two years to go to trial. I don't think that's a viable option.

I can deny this motion without prejudice, direct that Dr. Hardman submit a written report by a certain date and direct that Dr. Di Maio also submit a written report by a certain date. And after I've heard the testimony, determine whether or not it's necessary for the Court to hear anymore....

    . . . .

The third I can just deny this motion. But if I at some point decide to let Dr. Di Maio testify, submit his written findings, then I'm going to have to give defense a brief continuance to get a surrebuttal expert.

    . . . .

As [a] jury waive[d trial], it's easier to manage. But anyway those are the op-

---

5. Specifically, defense counsel asked the trial court, in the event that it denied the motion to exclude Dr. Di Maio's testimony, to grant a continuance until "after the first of the year" to prepare for that testimony. Transcript (May 15, 1996) at 8. Nevertheless, defense counsel submitted an affidavit attached to his May 30, 1996 supplemental memorandum making the incredible assertion that he has "[a]t no time ... ever filed a motion, or ... ever intended to file a motion, to continue Graham's trial into 1997."

The DPA, on the other hand, suggested that Dr. Di Maio would be able to testify as early as the week of June 3, 1996. In addition, the DPA indicated that Dr. Di Maio would be readily accessible to the defense by telephone and suggested that he "could be made available in person by flying him in a day or two before he is scheduled to testify" if necessary. Finally, Dr. Di Maio faxed a report of his conclusions in a letter dated May 17, 1996.

tions. Right now my inclination is just to grant the motion.

. . . .

... Di Maio is merely going to corroborate the testimony of the medical examiner, and it's just cumulative.[6]

. . . .

Both attorneys are in difficult positions because you're dealing with experts, and at this point we're just speculating because we don't have anything in writing from either Di Maio and Hardman. All we have is oral statements.

But, anyway, I'm going to deny the—I'm going to grant the motion for the following reasons:

One, *failure of the prosecution to attempt to interview Dr. Hardman earlier to elicit an opinion and the bases for the opinion.*

And, secondly, *failure to file a motion to compel disclosure in writing of any opinions and any bases of the opinions.*

I balance that against any legal prejudice from the prosecution. And as counsel have argued the case to this Court, the issue is very simple. Was there a knowing cause of death? And I guess the subsidiary issue would be the cause of death. But the medical examiner qualifies as an expert so the State has one expert, the defense has one expert. And under these circumstances, I don't think any further delays would be justified. It's for those reasons I'll grant the motion.

(Emphases added.)

## II. *STANDARD OF REVIEW*

■ A writ of mandamus is an extraordinary remedy that will not issue unless the petitioner demonstrates: (1) a clear and indisputable right to relief; and (2) a lack of other means to adequately redress the alleged wrong or obtain the requested action. Such writs are not meant to supersede the legal discretionary authority of the lower courts, nor are they meant to serve as legal remedies in lieu of normal appellate procedures. Where a trial court has discretion to act, mandamus clearly will not lie to interfere with or control the exercise of that discretion, even when the judge has acted erroneously, unless the judge has exceeded his or her jurisdiction, has committed a flagrant and manifest abuse of discretion, or has refused to act on a subject properly before the court in which it is subject to a legal duty to act. *Straub Clinic & Hospital v. Kochi,* 81 Hawai'i 410, 414, 917 P.2d 1284, 1288 (1996) (citations omitted).

## III. *DISCUSSION*

■ The State contends that the trial court did not make a finding that HRPP Rule 16 had been violated or that Graham suffered any prejudice as a result of being given the name of the State's expert witness only ten days before the scheduled week of trial. In the alternative, the State argues that the trial court abused its discretion by arbitrarily disregarding the less drastic sanction of granting a continuance rather than excluding the expert testimony. Graham replies that mandamus is not available to review discretionary decisions of the trial courts.

On the record before us, Graham's position is untenable for at least three reasons. First, Graham's contention is correct only insofar as this court has questioned the *precise extent* to which the "flagrant and manifest abuse of discretion" exception applies to mandamus proceedings. *See Akana v. Da-*

---

6. The DPA responded, as follows, to the court's tentative conclusion that Dr. Di Maio's testimony would be cumulative:

I don't believe so. Because Dr. [De Alwis] in her findings doesn't go into and perhaps that's what the concern Dr. Hardman is going to be pointing out that her findings do not necessarily support her conclusion; and that's why there's this dispute, I believe, that there is the autopsy and you have certain circumstantial findings at the scene. That according to my discussion with Dr. Hardman, I do not—cannot be used to reach the conclusion Dr. De Alwis does.

Doctor Di Maio, who apparently has considerable [sic] more expertise in this field because he's written on the subject, indicates to me that he can find evidence both forensic and medical that would support the conclusions of death by asphyxia due to suffocation. So it's completely—it's a lot more than what Dr. [De Alwis] is going to offer.

*mon,* 42 Haw. 415 (1958), *cited in State ex rel. Marsland v. Shintaku,* 64 Haw. 307, 312 n. 8, 640 P.2d 289, 293 n. 8 (1982).

The precise extent of this exception as articulated in *Fong v. Sapienza*[, 39 Haw. 79, 81 (1951),] was first brought into question in ... [*Akana*], which criticized the *Fong* court for its ruling as based on a quotation taken out of context in a former case. The majority in *Fong,* faced with the question whether mandamus would lie to compel an inferior court to exercise its discretion in a particular way, ruled that mandamus could be so issued where such discretion had been abused, based on a quotation from *In re Application of Ivers,* 12 Haw. 99 (1899), which ended as follows: "[Mandamus] does not lie to control judicial discretion, except when that discretion has been abused." *Id.* at 103, *quoting Virginia v. Rives,* 100 U.S. 313, 323 [25 L.Ed. 667] (1879). The *Akana* court, questioning this departure from the general rule of non-interference by way of mandamus where the judge has discretion, noted as had the lone dissenter in *Fong* that the quotation from *Virginia* should have been completed as follows: " ... but it is a remedy when the case is outside the exercise of this discretion, and outside of the jurisdiction of the court or officer to which or to whom the writ is addressed." *Virginia v. Rives, id.* at 323–24. It did not rule on the extent of *Fong*'s applicability in light of the completed quotation, however, as it found no abuse of discretion.

In *Brown v. Hawkins,* 50 Haw. 232, 437 P.2d 97 (1968:), the court saw no need to accept *Fong* as controlling, finding no abuse of discretion in the case before it. It therefore adhered to the rule of *Territory ex rel. Scott v. Stuart,* 22 Haw. 576 (1915), that mandamus will not lie to enter a particular judgment or to set aside a decision already made. We similarly need not rule on the extent of *Fong*'s applicability for the reasons set forth herein.

*Shintaku,* 64 Haw. at 312 n. 8, 640 P.2d at 293 n. 8. The *Shintaku* court expressed the following rationale for its decision to deny a writ of mandamus in that case:

In granting the motion for judgment of acquittal in the ... [proceedings below], Judge Shintaku acted fully within his prescribed powers as described in [HRPP Rule] 29(c). And while the State has raised serious questions about the correctness of the judge's decision, we cannot say that the State's petition on its face makes a "clear and indisputable" case of a flagrant and manifest abuse of discretion on Judge Shintaku's part. That being the case, the court is powerless to issue an extraordinary writ or to otherwise further review the merits of the State's petition.

We are mindful of our supervisory role over the courts of inferior jurisdiction "to prevent and correct errors and abuses therein where no other remedy is expressly provided by law." HRS § 602–4 (1976 & Supp.1981). Such power, as is that to grant extraordinary relief generally, has been exercised by this court in rare and exigent circumstances. *See Gannett Pacific Corp. v. Richardson,* 59 Haw. 224, 580 P.2d 49 (1978). For the reasons expressed above, however, we are compelled by the particular facts of the case to refrain from issuing mandamus in the exercise of that supervisory jurisdiction.

*Id.* at 313, 640 P.2d at 294 (footnote omitted).[7]

On at least four occasions, this court has granted the extraordinary writ of mandamus where a trial judge has misapplied the law. *See, e.g., Pelekai v. White,* 75 Haw. 357, 362–68, 861 P.2d 1205, 1208–11 (1993) (vacating trial judge's order setting bail in reliance upon an inflexible "bail schedule," promulgated by the senior judge, which unlawfully divested the trial court of the discretion accorded the bail-setting authority by HRS § 804–9 (1993)); *State ex rel. Marsland v. Ames,* 71 Haw. 304, 308, 788 P.2d 1281, 1283–84 (1990) (granting writ of mandamus where trial judge misapplied HRPP Rule 16(d) to misdemeanor case of driving under the influence); *In re Doe, born 9/22/65,* 67 Haw. 466,

---

7. In *Gannett,* the court granted a writ of prohibition reaffirming an interim order that precluded the trial judge in a high-profile criminal case from closing the preliminary hearing to the public.

469, 691 P.2d 1163, 1165 (1984) (reversing family court's *sua sponte* dismissal of the prosecution's petition for waiver of jurisdiction over a minor under HRS § 571–22(c) (Supp.1983), and issuing a writ of mandamus directing the family court to hold a hearing on the petition so that the prosecution would have the opportunity to demonstrate that the statutory preconditions had been satisfied); *State ex rel. Marsland v. Town*, 66 Haw. 516, 526–27, 668 P.2d 25, 31–32 (1983) (granting writ of mandamus where family court failed to comply with HRS § 571–22 concerning the waiver of jurisdiction over a minor); *cf. In re Tactacan*, 42 Haw. 141, 142–43 (1957) (refusing to grant writ of mandamus notwithstanding trial judge's apparently erroneous denial of plaintiff's unopposed motion to consolidate five cases involving the same property, *see* Revised Laws of Hawai'i § 193–45 (1955), because plaintiff would have an adequate remedy by way of an appeal).

Second, a writ of mandamus is appropriate in the instant case because there is no other means available to adequately redress the alleged wrong or obtain the requested action, and the prosecution has demonstrated a clear and indisputable right to relief.

The trial court faulted the prosecution for failing to 1) attempt to contact Dr. Hardman sooner than it did for the purpose of eliciting his opinions in unwritten form and 2) file a motion to compel disclosure in writing of Dr. Hardman's opinions and any bases for those opinions.[8] However, the court's implicit finding that the DPA did not fully comprehend the nature of Dr. Hardman's testimony until very late in the process exonerates the prosecution. In other words, the court did not impose sanctions on the prosecution for fail-

ing to comply with its obligation under HRPP Rule 16(e)(2) to "promptly disclose" additional information—*viz.*, the name of a new expert witness that the DPA planned to call during presentation of its evidence in chief, *see* HRPP Rule 16(b)(1)(i)—obtained subsequent to the DPA's compliance with initial discovery requirements. Rather, the court essentially sanctioned the prosecution because it *"should have realized* that it was not going to have a report [from Dr. Hardman] or one would not be forthcoming in a timely manner." (Emphasis added.) Although HRPP Rule 16(e)(9)(i) provides the court with discretion to enter orders that it "deems just under the circumstances" when "a party has failed to comply with this rule[,]" the court in the instant case precluded the prosecution's expert witness from testifying during its case in chief because the prosecution did not promptly determine the need for an additional expert witness. Nevertheless, HRPP Rule 16(b)(1)(i) does not obligate the prosecution to disclose the name and address of, or statements made by, any person, unless and until the prosecution intends to call that person as a witness in the presentation of the evidence in chief.[9] When that decision is made, the prosecution must "promptly disclose" the appropriate information to the defense.

We observe that there is no indication in the record that the DPA willfully or negligently "withheld" any material information from the defense.[10] Rather, close inspection of the record reveals that the DPA acted in good faith and with civility by attempting to work out discovery issues with defense counsel before seeking to invoke the court's authority. The trial court implicitly recognized

---

8. However, we observe that counsel are encouraged to work out any disputes before seeking relief in court. *See* HRPP Rule 16(e)(8) (requiring counsel to confer concerning all disputed issues under this rule); Motions Order No. 5 (Haw. 1st Cir. Feb. 4, 1992) (directing counsel to "confer and attempt in good faith to reach an agreement" prior to filing a motion to compel).

9. *But see* HRPP Rule 16(b)(1)(iii) (establishing a duty to disclose reports or statements of experts material to the preparation of the defense and specifically designated in writing by defense counsel); HRPP Rule 16(b)(1)(vi) (requiring disclosure of exculpatory material or information).

10. *Cf. State v. Montalbo*, 73 Haw. 130, 135, 828 P.2d 1274, 1278 (1992) (observing that HRPP Rules 16(b)(1)(iii) and (iv) provide "a right of discovery conditioned on the materiality of the item to the preparation of the defense"). *See also State v. Okumura*, 78 Hawai'i 383, 397, 894 P.2d 80, 94 (1995) (dismissing an argument advanced by one of the defendants that the trial court erred in failing to remedy an alleged HRPP Rule 16 violation "[b]ecause the prosecution was not obligated to disclose ... polygraph examination results").

that the DPA had relied on defense counsel's assurances that Dr. Hardman was working on a report; however, we observe that defense counsel destroyed the only document prepared by Dr. Hardman to date, as far as we can tell from the record,[11] without even mentioning having done so to the DPA. Without a report of the defense expert's opinion, the prosecution's ability to prepare for trial was severely impaired. *Cf. Lee v. Elbaum*, 77 Hawai'i 446, 454, 887 P.2d 656, 664 (App. 1993), *cert. granted*, 74 Haw. 651, 853 P.2d 542, *cert. denied*, 77 Hawai'i 489, 889 P.2d 66 (1995); *Swink v. Cooper*, 77 Hawai'i 209, 881 P.2d 1277 (App.1994) (affirming the exclusion of additional expert testimony, which was offered *at trial* in violation of the continuing duty to supplement prior discovery responses).[12] Nevertheless, without the benefit of such a report and based only on his understanding of Dr. Hardman's opinion as conveyed by defense counsel, the DPA continued his efforts to prepare for trial. He consulted with Dr. De Alwis regarding Dr. Hardman's presumed testimony between February and April 1996.

■ Although the DPA first contacted Dr. Di Maio about the possibility of assisting the prosecution at trial in mid-April 1996, the doctor did not respond until April 29, 1996. On May 6, 1996, the DPA transmitted relevant materials to Dr. Di Maio, by express mail, for him to review. The DPA did not retain Dr. Di Maio until, at the earliest, four days before announcing his intent to call him as an expert witness. It cannot reasonably be said that the DPA's revelation during the pretrial conference amounted to a failure to promptly disclose Dr. Di Maio to the defense. The record does not reveal that the court issued a pretrial order setting a cut off date for naming expert witnesses. Nor was there any impediment preventing the court from exercising its inherent powers by issuing an order setting discovery cut off dates and/or deadlines for the final naming of witnesses patterned after Rule 12 of the Rules of the Circuit Courts of Hawai'i (RCCH). *See* RCCH Rules 12(*l*), 12(m), and 12(r). Moreover, any argument that the DPA neglected to comply with HRPP Rule 16 must fail because the HRAP contain no requirement that discovery must be performed by a certain date prior to trial.[13] In fact, HRPP Rule 16(e)(2) contemplates lawful disclosure *during trial* when a party discovers any additional material or information.[14] All that is

---

11. In an affidavit attached to his May 30, 1996 supplemental memorandum, defense counsel avers that Dr. Hardman promised to provide a written report by May 31, 1996. According to defense counsel, Dr. Hardman has also agreed to retrieve a copy of the missing document, which will then be provided to the State. It is ironic that, as a result of the DPA's misplaced reliance on defense counsel's assurances, the court sanctioned the DPA by excluding Dr. Di Maio but, nevertheless, Dr. Di Maio submitted a written report outlining his expert opinion at least two weeks before Dr. Hardman submitted his long-promised report (assuming, of course, that defense counsel's most recent assurance finally came to pass).

12. *Elbaum* and *Swink* discuss the analogous rule governing supplemental disclosure of expert opinions in civil cases. *See* HRCP Rule 26(e)(1)(b) (imposing a continuing obligation to *seasonably* supplement responses to discovery requests concerning expert witnesses). In *Elbaum*, which also involved the issue of unfair surprise *at trial* resulting from failure to supplement prior discovery responses, the ICA recognized that "[e]ffective cross-examination of an expert witness requires advance preparation. The lawyer even with the help of his own experts frequently cannot anticipate the particular approach his

adversary's expert will take[.]" 77 Hawai'i at 454, 887 P.2d at 664 (citation omitted). The defense implicitly acknowledged the applicability of this principle to criminal cases in a September 13, 1995 letter advising the DPA that "[u]ntil the State provides full discovery ..., the defense cannot respond to ... [your request for discovery concerning expert testimony]."

13. In *State v. Dowsett*, 10 Haw.App. 491, 878 P.2d 739, *cert. denied*, 77 Hawai'i 373, 884 P.2d 1149 (1994), the Intermediate Court of Appeals questioned the effectiveness of the "willful" standard under HRPP Rule 16(e)(9)(ii) as a deterrent to discovery violations and observed that "negligent non-compliance has equally deleterious effects on discovery objectives." 10 Haw.App. at 499, 878 P.2d at 743.

14. We observe that, pursuant to Hawai'i Rules of Evidence (HRE) Rule 403, the trial court retains the discretion to exclude evidence discovered by the prosecution during trial (including evidence that the prosecution should have discovered sooner) and offered for admission therein, provided that the court determines the probative value of such evidence, although relevant, is outweighed by the danger of prejudice or by considerations of undue delay.

required under the rule is prompt disclosure once the additional material or information is obtained.

██ . Third, and finally, to the extent that the trial court may have been exercising its inherent power to administer justice by imposing sanctions as a remedy for perceived prejudice to the defendant, *see Richardson v. Sport Shinko,* 76 Hawai'i 494, 507–08, 880 P.2d 169, 182–83 (1994), rather than relying on HRPP Rule 16(e)(9)(i), we review its ruling for abuse of discretion. *Id.* (citing *Kukui Nuts of Hawaii, Inc. v. R. Baird & Co.,* 6 Haw.App. 431, 438, 726 P.2d 268, 272 (1986)). As discussed earlier, the trial court implicitly found that the DPA had not willfully failed to disclose Dr. Di Maio at an earlier time. Based on the record before us, we cannot conclude that the DPA's failure to determine the need for Dr. Di Maio's testimony sooner was negligent. In any event, we reject Graham's allegation that he was severely prejudiced by the disclosure of Dr. Di Maio as an expert witness less than two weeks before the date set for trial. The jury-waived trial had not yet begun, and the prosecution was amenable to a continuance. Moreover, Dr. Di Maio was not being offered to support a new theory concerning the cause of death, but merely to shore up perceived gaps in Dr. De Alwis's testimony based upon evidence that had already been disclosed to the defense.

Thus, under the circumstances presented in this case, we hold that the trial court's exclusion of the State's expert witness amounted to a flagrant and manifest abuse of discretion.

## IV. *CONCLUSION*

Based on the foregoing analysis, we granted the State's writ of mandamus on May 31, 1996 and, thereby, vacated the trial court's oral order excluding the State's expert witness from testifying and dissolved the temporary stay.