**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000606
19-FEB-2026
07:51 AM
Dkt. 92 SO**

NO. CAAP-24-0000606

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
NAINOA DAMON, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-22-0000378)

**SUMMARY DISPOSITION ORDER**
(By: Nakasone, Chief Judge, Leonard and Guidry, JJ.)

Defendant-Appellant Nainoa Damon (**Damon**) appeals from the Circuit Court of the First Circuit's (**circuit court**) "Judgment of Conviction [and] Sentence" (**Judgment**), entered on August 22, 2024, and "Free Standing Order of Restitution" (**Restitution Order**), entered on August 23, 2024.[1]

On March 30, 2022, the State of Hawai'i (**State**) charged Damon by Indictment with the following six counts: (1) Murder in

---

[1] The Honorable Shanlyn A.S. Park presided.

the Second Degree, in violation of Hawaii Revised Statutes (**HRS**) §§ 707-701.5 (Supp. 2019), 706-656 (2014); (2) Carrying or Use of Firearm in the Commission of a Separate Felony, in violation of HRS § 134-21 (2023); (3) Robbery in the First Degree, in violation of HRS § 708-840(1)(b)(ii) (2014); (4) Carrying or Use of Firearm in the Commission of a Separate Felony, in violation of HRS § 134-21; (5) Place to Keep Pistol or Revolver, in violation of HRS § 134-25 (2023); and (6) Terroristic Threatening in the First Degree, in violation of HRS § 707-716(1)(e) (2014).

A jury found Damon guilty on all counts, and found that the HRS § 706-660.1 (2014) sentencing enhancement should be imposed. The circuit court sentenced Damon to the following prison terms: (1) on Count 1, to a life term with the possibility of parole, with a mandatory term of 15 years; (2) on Counts 2, 3, and 4, to an indeterminate term of 20 years; (3) on Count 5, to an indeterminate term of 10 years; and (4) on Count 6, to an indeterminate term of 5 years. The circuit court ordered all terms to be served concurrently. In its Restitution Order, the circuit court also ordered Damon to pay $3,980.73 to the family of the Decedent.

Damon raises the following points of error on appeal, contending that the circuit court: (1) erred in denying "Damon a right to a fair trial by failing to dismiss [a juror]"; (2)

erred "in allowing [Federal Bureau of Investigation Special Agent Andrew Masters (**Agent Masters**)] to testify as to his updated opinions contained in his untimely updated report"; (3) erred "in allowing Ridge Li[ʻ]i [(**Liʻi**)] and Andreas Schneider [(**Schneider**)] to testify"; (4) "plainly erred in failing to give a self-defense instruction"; and (5) "plainly erred in its special interrogatory." (Formatting altered.) Damon also contends, as point of error (6), that his trial counsel "was ineffective and substantially impaired his defense," and, as point of error (7), that "[t]he cumulative effect of the errors deprived Damon of a right to a fair trial." (Formatting altered.)

Upon careful review of the record, briefs, and relevant legal authorities, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Damon's contentions of error as follows:

(1) Damon contends that the circuit court erred when it failed to dismiss one of the jurors, following the juror's exposure to an outside influence, thereby violating his right to a fair trial. We review Damon's contention for abuse of discretion. State v. Grewer, 157 Hawaiʻi 104, 111, 575 P.3d 737, 744 (2025) ("When a claim of juror misconduct arises, trial courts first determine whether the alleged deprivation is of a substantially prejudicial nature. In making this determination,

trial courts look to the 'general nature' of the alleged misconduct and whether it 'could' substantially prejudice the defendant.  Whether a juror's alleged misconduct 'could' substantially prejudice the defendant is a question left to the trial court's discretion.") (citations omitted).

The record reflects that, following a verbal outburst in the gallery between two trial attendees, the circuit court conducted an individual voir dire of each juror.  The circuit court asked each juror: (1) if they saw or heard anything of the "outburst" in court; (2) if so, what they saw or heard; and (3) whether what they saw or heard would affect their ability to be fair and impartial.  The circuit court also instructed each juror to set aside what they saw or heard, and to not discuss the "outburst" or voir dire with any other juror.

Damon contends that the circuit court erred by not excluding a juror who testified that she saw "a gentleman talking to another gentleman," and that she heard one man say to the other "something about don't talk about him like that" and "you're a good boy."  Observing that the juror appeared "visibly upset" during voir dire, the circuit court asked the juror: "Can you tell me how this incident has affected you?"  The juror twice told the circuit court she is "a cry baby" and that she "cr[ies] about everything."  In response to the circuit court's questions, the juror affirmed that she could be a fair and

impartial juror in this case, that she would follow the circuit court's "instruction to set this incident aside and just judge this case solely based upon the witnesses here . . . and the documents that come into evidence," and that she would not discuss the incident or voir dire with the other jurors.

The circuit court recalled this juror for a second voir dire when it came to the circuit court's attention, after the initial voir dire, that the juror "had expressed concern for her safety in the public, . . . in regard to being a juror in this case." The juror informed the circuit court during this second voir dire that she worked in sales and, through her work, "encounter[s] everybody in the public" and "help[s] police officers and . . . everybody." The circuit court again questioned the juror as to her ability to perform her duties as a juror, as follows:

> THE COURT: [Juror], I need to be sure. Remember what I said. I have three functions as a judge, and one of those functions is to be sure that the process is fair. So I'm just asking you for your most honest answer.
> There's no right --
>
> THE JUROR: Right.
>
> THE COURT: -- or wrong answer. All right? I just want you to understand that.
> Given your strong emotions with respect to this incident this afternoon that you exhibited to me, would that affect your ability to focus on the evidence coming into this trial or would it affect -- do you believe that it would affect your ability to be fair and impartial to both the prosecution and the defense in this case?
>
> THE JUROR: It will not affect my, uh --
>
> THE COURT: Okay.

THE JUROR: -- thinking.

THE COURT: All right. So you feel you can proceed forward as a juror even though you have these concerns?

THE JUROR: Yes.

(Formatting altered.)

Following this questioning, the circuit court determined that the juror could be fair and impartial.[2]

On this record, we conclude that the circuit court did not abuse its discretion by allowing the juror to remain on the jury.

(2) Damon contends that the circuit court erred in "allowing Agent Masters to testify as to his updated opinions contained in his untimely updated report," as this violated Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 16. (Formatting altered.) "Generally, the decision whether to admit expert testimony rests in the discretion of the trial court." State v. McDonnell, 141 Hawaiʻi 280, 289, 409 P.3d 684, 693 (2017) (citation omitted). However, "to the extent that the trial court's decision is dependent upon interpretation of court rules, such interpretation is a question of law, which the appellate court reviews de novo." Id. (cleaned up).

---

[2]     We note that Damon's trial counsel asked the circuit court to excuse the juror "out of an abundance of caution" based on his concerns that the juror's "founded belief that she's gonna get caught in the crossfire out there" would "kick back," but acknowledged that he thought the juror could "be fair and impartial."

The record reflects that the State disclosed Agent Masters' original report to Damon on August 23, 2023. Agent Masters' report analyzed Damon's cell phone locations around the time of the charged offenses. The State noticed its intent to call Agent Masters as an expert "in the area of historical cellular site analysis." After both parties had indicated their readiness to go to trial on March 12, 2024, the State learned of Agent Masters' amended report on March 20, 2024 and received the amended report on March 21, 2024.[3] The State represents that it disclosed the amended report to defense counsel on March 21, 2024, the same day that it received the amended report from Agent Masters. Damon does not identify any pre-trial order that was violated by the admission of this evidence, which was disclosed more than a month before the May 1, 2024 trial. Nor does he point to any evidence of bad faith or intentional withholding.

In State v. Escobido-Ortiz, this court explained that,

> [**HRPP Rule 16(b)**] requires the State to *disclose* material and information within the prosecutor's possession or control; it **does not require the prosecution to *discover* relevant evidence by a particular deadline.** Indeed, **HRPP Rule 16(e)(2) contemplates that a prosecutor may discover and disclose relevant evidence during trial**. By promptly disclosing the [evidence] upon learning of [the expert's] analysis, the prosecution complied with its HRPP Rule 16 obligations with respect to that evidence.

---

[3] The amended report differed from the original report because, inter alia, it included a new "data session . . . that is a reliable indicator of [Damon's] phone's location."

109 Hawai'i 359, 363-64, 126 P.3d 402, 406-07 (App. 2005) (emphasis added) (cleaned up).

On this record, we conclude that the State's prompt disclosure of the amended report complied with HRPP Rule 16(e)(2)'s continuing duty to disclose, and that the circuit court did not abuse its discretion in allowing Agent Masters to testify regarding his amended report.

(3) Damon contends that the circuit court erred in admitting the testimonies of two State witnesses, Li'i and Schneider, because these witnesses were disclosed to Damon after trial call in violation of HRPP Rule 16.

Damon moved to preclude Li'i and Schneider's testimonies, and the circuit court held an evidentiary hearing at which Honolulu Police Department Detective Justin Higa (**Detective Higa**) testified. Detective Higa testified that neither Li'i nor Schneider had initially come forward to give statements to the police, and that he was not able to interview them until March 11, 2024. Among other things, while it appears that Detective Higa lacked Li'i and Schneider's contact information, the circuit court's April 23, 2024 "Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Preclude Evidence Filed April 2, 2024" (**Order Denying Preclusion**) noted that Detective Higa included the names of these two witnesses as "Ridge" and "Andreas" in his November 25,

2022 closing report.[4]  Detective Higa testified that he disclosed Liʻi and Schneider's March 11, 2024 recorded interviews to the State "right away."  The State promptly disclosed Detective Higa's supplemental report with these additional witness statements in March 2024, which was over a month before the May 1, 2024 trial.

Damon does not identify any evidence demonstrating the State knew that Detective Higa intended to interview Liʻi and Schneider prior to receiving their recorded interviews in March 2024, or that the State failed to promptly disclose the recordings of Liʻi and Schneider's interviews.  See State ex rel. Kaneshiro v. Huddy, 82 Hawaiʻi 188, 195, 921 P.2d 108, 115 (1996) ("HRPP Rule 16(b)(1)(i) does not obligate the prosecution to disclose the name and address of, or statements made by, any person, unless **and until** the prosecution intends to call that person as a witness in the presentation of the evidence in chief.") (emphasis added) (footnote omitted).

On this record, we conclude that the circuit court did not abuse its discretion in admitting Liʻi and Schneider's testimonies.[5]

---

[4]     The findings of fact are unchallenged.

[5]     In conjunction with point of error (3), Damon challenges conclusions of law 1 through 5 in the Order Denying Preclusion.  We conclude that conclusions of law 1 through 5 are not wrong.  See State v. Lavoie, 145

(continued . . .)

(4) Damon contends that the circuit court plainly erred by failing to sua sponte instruct the jury as to self-defense.[6] "When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." State v. Culkin, 97 Hawai‘i 206, 213, 35 P.3d 233, 240 (2001).

"Criminal defendants are entitled to jury instructions on every defense or theory of defense having any support in the evidence." Id. at 214, 35 P.3d at 241 (citations omitted). However, "where evidentiary support for an asserted defense, or for any of its essential components, is clearly lacking, it would not be error for the trial court to refuse to charge on the issue or to instruct the jury not to consider it." State v. Tuaolo, No. CAAP-19-0000060, 2023 WL 4044583, at *2 (Haw. App. June 16, 2023) (SDO) (cleaned up).

Pursuant to HRS § 703-304(2) (2014), "[t]he use of deadly force is justifiable under this section if the actor believes that deadly force is necessary to protect himself

---

[5](. . .continued)
Hawai‘i 409, 421, 453 P.3d 229, 241 (2019) ("Conclusions of law are reviewed de novo under the right/wrong standard of review.") (citation omitted).

[6]    Damon withdrew his self-defense and justifiable use of force instruction.

against death, serious bodily injury, kidnapping, rape, or forcible sodomy." The record does not reflect any evidence to refute the State's theory that Damon was the initial aggressor, or to establish Damon's reasonable belief that shooting the Decedent was necessary to his self-defense.

We therefore conclude that the circuit court's jury instructions were not prejudicially insufficient, erroneous, inconsistent, or misleading.

(5) Damon contends that the circuit court committed plain error because its special interrogatory failed to instruct the jury on the "state of mind as to possession" required to impose a mandatory minimum term of imprisonment pursuant to HRS § 706-660.1.[7] "Because special interrogatories are another way in which trial courts instruct juries as to their deliberations and decisions, we review a trial court's special interrogatories, or the lack thereof, as we would its jury

---

[7]     HRS § 706-660.1 states, in pertinent part,

(1) A person convicted of a felony, **where the person had a firearm in the person's possession or threatened its use or used the firearm while engaged in the commission of the felony,** whether the firearm was loaded or not, and whether operable or not, may in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a **mandatory minimum term of imprisonment without possibility of parole** or probation the length of which shall be as follows:

(a) For murder in the second degree and attempted murder in the second degree--up to fifteen years[.]

instructions, or the lack thereof[.]"  State v. Sanford, 97

Hawai‘i 247, 256, 35 P.3d 764, 773 (2001).

In State v. Smith, the Hawai‘i Supreme Court held that,

"a sentencing enhancement under HRS § 706-660.1 is not an

element of an underlying offense within the meaning of HRS §

702-205."  157 Hawai‘i 1, 10, 575 P.3d 634, 643 (2025).

> Importantly, HRS § 706-660.1 does not establish an
> 'offense' for possession of a firearm during the commission
> of a felony. . . . HRS § 706-660.1 establishes factors for
> imposing a mandatory minimum term during sentencing,
> following a predicate conviction.

Id. at 9, 575 P.3d at 642.  The Smith court rejected the

challenge that an indictment had to allege a state of mind for a

HRS § 706-660.1 sentencing enhancement.  Id. at 8, 575 P.3d at

642.  Here, Damon's HRS § 706-660.1 sentencing enhancement was

imposed pursuant to his predicate conviction for Murder in the

Second Degree (**Count 1**).  In finding Damon guilty as to Count 1,

the jury found that Damon "intentionally or knowingly engaged in

conduct" and "by engaging in that conduct, [Damon] intentionally

or knowingly caused the death of [the Decedent]."  Because a HRS

§ 706-660.1 sentencing enhancement is not an element of the

predicate murder conviction in Count 1, the special

interrogatory on the enhancement was not required to include a

state of mind.  We therefore conclude that the special

interrogatory as to Count 1 was not erroneous.

12

(6) Damon contends, for the first time on appeal, that his trial counsel was ineffective. "When a defendant first raises the issue of ineffective assistance of counsel on direct appeal, the appellate court may consider the merits of the appeal de novo if the record is sufficiently developed to determine whether there has been ineffective assistance of counsel." State v. Salavea, 147 Hawai'i 564, 575, 465 P.3d 1011, 1022 (2020) (cleaned up).

In addressing Damon's ineffective assistance of counsel claim, we consider whether when, "viewed as a whole," trial "counsel's assistance was within the range of competence demanded of attorneys in criminal cases." State v. DeLeon, 131 Hawai'i 463, 478-79, 319 P.3d 382, 397-98 (2014) (citation omitted). Damon must establish "that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence," and "that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998) (citations omitted).

On this record, we conclude Damon does not establish that his counsel was ineffective in failing to cross-examine witnesses about the Decedent's alleged gang membership, drug dealing, and gun use. Nor does he establish that his counsel was ineffective for failing to object to Agent Masters' amended

report being admitted into evidence.  See Lussier v. Mau-Van Dev., Inc., 4 Haw.App. 359, 393, 667 P.2d 804, 826 (App. 1983) ("[O]bjections need not be renewed if the prior ruling on the motion in limine amounted to an unequivocal holding concerning the issue raised.") (citation omitted).

The record is insufficient for us to determine whether trial counsel was ineffective by not requesting a continuance after the circuit court denied Damon's motions to preclude Agent Masters' amended report and Liʻi and Schneider's testimonies. Damon contends that a continuance would have provided time for defense counsel to consider the retention of an expert to refute Agent Masters' testimony, and to look into whether there were any issues that could have affected Liʻi and Schneider's credibility.  It is unclear whether defense counsel weighed these considerations, such that proceeding without a continuance was part of the defense's trial strategy.  We therefore affirm Damon's conviction without prejudice to Damon filing an HRPP Rule 40 petition on this point.

(7) Damon contends that the cumulative impact of the alleged points of error deprived him of his right to a fair trial.  For the reasons discussed supra, Damon's points of error (1) through (6) lack merit, and there is therefore no "cumulative" error.

For the foregoing reasons, we affirm the circuit court's Judgment and Restitution Order.

DATED: Honolulu, Hawaiʻi, February 19, 2026.

On the briefs:

Audrey Stanley,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge